UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AUBREY JEROME LAMB,

        Plaintiff,

v.

        Case No. 23-cv-614-pp

PLEASANT PRAIRIE POLICE DEPARTMENT
and STEVE MCKINNON,

        Defendants.

---

## ORDER SCREENING COMPLAINT AND REQUIRING PLAINTIFF TO FILE AMENDED COMPLAINT

---

On May 15, 2023, the plaintiff—who is representing himself—filed a complaint which appears to allege that various police officers used unreasonable force against him during two incidents in the late 1990s. Dkt. No. 1. The same day, the court received from the plaintiff a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. The court had reviewed the plaintiff's filings but had not yet issued its screening order when, on March 7, 2024, the court received from the plaintiff the full filing fee. That resolved the plaintiff's motion for leave to proceed without prepaying the filing fee. The court has screened the complaint and will give the plaintiff the opportunity to file an amended complaint because the original complaint fails to state a claim on which relief may be granted.

1

## I. Legal Standard

The Seventh Circuit has held that under 28 USC §1915(e)(2)(B) a district court has "the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status." Rowe v. Shake, 196 F.3d 778, 783 (7th Cir.1999). "The purpose of such screening is to identify claims that are legally 'frivolous or malicious,' that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief." Deidre A. Cooper v. Forest Cnty. Potawatomi Hotel & Casino, Case No. 23-CV-1611, 2023 WL 8891433, at *1 (E.D. Wis. Dec. 26, 2023) (quoting 28 U.S.C. §1915(e)(2)(B)); Hoskins v. Poelstra, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense."). A district court may "dismiss frivolous or transparently defective suits spontaneously . . . even when the plaintiff has paid all fees for filing and service[.]" Hoskins, 320 F.3d at 763; see also Khor Chin Lim v. Hellenbrand, Case No. 12-C-0296, 2012 WL 3113180, at *4 (E.D. Wis. July 31, 2012) (rejecting a non-prisoner plaintiff's argument "that his payment of the filing fee insulates his complaints from dismissal for frivolousness or failure to state a claim under 28 U.S.C. §1915(e)(2)(B)").

Section 1915(e)(2)(B) states that, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that— . . . the action or appeal— . . . fails to state a claim on which relief may be granted[.]" 28 USC §1915(e)(2)(B)(ii)

(emphasis added). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that he is entitled to relief. Federal Rule of Civil Procedure 8(a)(2). A plaintiff does not need to plead every fact supporting his claims; he needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64. In evaluating plausibility, the court looks to the complaint as well as "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013). A document filed by a person who is representing himself must be "liberally construed," and a complaint filed by someone representing himself, "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

3

## II.  The Plaintiff's Allegations

### A.  The Defendant(s) and Jurisdiction

The plaintiff's complaint and motion for leave to proceed without prepaying the filing fee send conflicting messages about whom, specifically, he wishes to sue. Dkt. Nos. 1, 2. The complaint's caption lists the following under "(Full name of defendant(s))":

> Pleasant Prairie Police Department
> Kenosha, Wisconsin 53144
> (Steve McKinnon)

Id. at 1. But under "Parties," the complaint lists only "Pleasant Prairie Police Department Kenosha, Wisconsin 53144." Id. at 2. The caption for plaintiff's motion for leave to proceed without prepaying the filing fee lists only "Steve McKinnon" as a defendant.[1] Dkt. No. 2 at 1. The court will assume that the plaintiff intended to sue both the "Pleasant Prairie Police Department" and "Steve McKinnon."

On page 7 of the complaint, the plaintiff marked the box that said he was suing under state law and his citizenship was different from the state of citizenship of every defendant. Dkt. No. 1 at 7. But he alleges that he and the Pleasant Prairie Police Department both are residents of Wisconsin. This means the plaintiff has not pled diversity jurisdiction. See Page v. Democratic Nat'l Comm., 2 F.4th 630, 636 (7th Cir. 2021) (stating that diversity jurisdiction,

---

[1] The plaintiff's motion for leave to proceed without prepaying the filing fee concludes with the plaintiff saying, "I would like for this case to be heard and *these five officers* locked up for police brutality." Dkt. No. 2 at 4 (emphasis added). Neither the motion nor the plaintiff's complaint identify "these five officers." Dkt. Nos. 1, 2.

4

under §1332 exists where "no party on the plaintiff's side of the suit shares citizenship with any party on the defendant's side"). Because the plaintiff possibly has pled a federal question under 28 U.S.C. §1331, the court will screen his complaint. See Lawrence v. Interstate Brands, 278 F. App'x 681, 684 (7th Cir. 2008) ("Federal-question jurisdiction exists when a plaintiff's right to relief is created by, or depends on, a federal statute or constitutional provision."); Hero v. Lake Cnty. Election Bd., 42 F.4th 768, 775 (7th Cir. 2022) (stating that "[t]he well-pleaded rule requires that a federal question be 'apparent on the face' of the complaint" (quoting Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc., 707 F.3d 883, 890 (7th Cir. 2013))).

B. The Factual Allegations

The body of the complaint is composed of two typed letters detailing the plaintiff's factual allegations. Dkt. No. 1 at 3-6. The first letter is dated "July 21, 20001 [sic]," and is addressed to "Attorney Robert J. GinGras." Id. at 3. The second letter is dated April 29, 2001, and is addressed to "Administrative Law Judge." Id. at 5. These letters describe two times the plaintiff interacted with police officers, first on December 9, 1998 and then on March 30, 1999. Id. at 3-6.

1. *Incident on December 9, 1998*

According to the plaintiff, on December 9, 1998, he was working as a "Field Supervisor for National Building Maintance [sic] Co." Id. at 3. In this role, it appears that the plaintiff monitored a "Super value warehouse in Pleasant Prairie, WI." Id. at 5. The plaintiff "secured all the interior entrances"

5

of the warehouse and made "exterior perimeter checks." Id. The plaintiff states that he "[a]ll together . . . made four rounds of the factory in side [sic] and out." Id. After the plaintiff "returned to the front office to finish [his] supervisor duties and . . . gather[] information to fulfill [his] job description," an employee named "Gretchen Schulte"[2] confronted the plaintiff. Id. at 3, 5. The plaintiff claims that Schulte yelled that he should not be in the office, harassed him and grabbed his wrist. Id. at 5. The plaintiff states that he "pushed [Schulte] off" and then "went back to [his] duties." Id. Schulte called the police and officers from the Pleasant Prairie Police Department arrived on scene. Id.

When officers arrived, the plaintiff "made a phone call to one of the supervisors in Milwaukee, WI. and briefly explained what went on." Id. An officer then approached the plaintiff, and stated she would like to talk to him outside the entrance. Id. The plaintiff explained to the officer that Schulte harassed him, acted disorderly toward him and was profane and boisterous. Id. The plaintiff told the officer that Schulte "grabbed [the plaintiff] by the rist [sic], which is a violation of WI. Statue [sic] 940.19 which gave [the plaintiff] the right to use WI. Statue [sic] 939.48(1)."[3] Id.

The officer directed other officers to take the plaintiff to the police car, where the plaintiff "was detained . . . without being handcuffed." Id. After

---

[2] The plaintiff does not clarify who employs "Gretchen Schulte." Dkt. No. 1 at 3, 5. From context, it seems that Schulte may have worked at the Super Value warehouse. Id.

[3] Wis. Stat. §940.19 criminalizes battery. Wis. Stat. §939.48(1) allows a person to claim self-defense as a defense to criminal liability.

6

"waiting three to seven minutes[,]" the plaintiff asked an unidentified police officer what was going on, and was told that "they were questioning the other employee." Id. The plaintiff observed an officer "walking the perimeter and making sure there were no people around." Id. The plaintiff went back to talking with the unidentified officer, whom he describe as "very angry or disturbed." Id. The officer "accused [the plaintiff] of battering Gretchen Schulte," to which the plaintiff responded, "she's the one who put her hands on me." Id. When the officer asked, the plaintiff said he did not have any abrasions. Id. The plaintiff asked the officer to "let [him] out of the vehicle." Id. The officer then "got out of the vehicle and opened the back door." Id.

"As soon as [the plaintiff] step[ped] out of the vehicle," he was "pepper sprayed" and "grabbed by the chest of the right shoulder by both of officers." Id. The plaintiff "defended [him]self and ran around the office perimeter due to lack of vision and breath." Id. The plaintiff yelled he was "going to sue" the officers while he ran. Id. One of the officers chased the plaintiff "back to north entrance of the office." Id. This officer "grabbed [the plaintiff] into a lower position and all the other officers bruitaley [sic] beat [the plaintiff] in the back, the head," while the plaintiff told them he "couldn't breath [sic]." Id. The officers "kept hitting [the plaintiff] and pepper spraying [him] again and again intill [sic] [he] was unconscious." Id. The plaintiff woke "from being unconscious at Kenosha Memorial Hospital emergency room" but received "no medical treatment intill [sic] [he was] placed in Kenosha County Jail and House

7

of correction." Id. The plaintiff was "[t]reated for mental illness only, no physical treatment." Id.

        2.    *Incident on March 30, 1999*

The plaintiff "bailed out [of] jail January 27, 1999 seeking medical attention." Id. "On March 30, 1999 at aproxmaitely [sic] around 6:30 their [sic] was an [sic] family dispute." Id. at 6. The plaintiff "left the house." Id. "[L]ater[,]" when the plaintiff "was on [his] way to work" he "saw red and blue flashes from a Racine Police Dept. Vehicle, meaning to pull over." Id. at 3, 6. The plaintiff "immediately [sic] . . . pulled over and waited." Id. at 3. The plaintiff observed "about fifteen state and County vehicles had blocked the intersection one block before Ohio street going west." Id. The plaintiff stated he still is "not aware of who was in back of [his] vehicle, [he] could'nt [sic] see anything." Id. The plaintiff "was wondering if an officer was going to tell [him] what was the problem" but "no police officers approached a vehicle." Id. The plaintiff "waited for two or more hours in the vehicle patiently." Id. at 6. The plaintiff asserts that "[a]ll of a sudden, [the plaintiff] was shot in the back cheer gased [sic] and brutailey [sic] in the growing [sic] by Racine, WI. City Police Officers." Id. at 3.

The plaintiff "was taken to St. Lukes Hospital for a 2.5 cm puncture wound in the back" where he "was treated while handcuffed." Id. at 6. The plaintiff was "[p]laced in Racine County Jail and sent to Winnebago Mental Health Institute." Id. The plaintiff was "[t]eated for puncture wound . . . later was bleeding from the growing sack." Id. The plaintiff "asked for alcohol swab

8

and was denied by the Rct." Id. The plaintiff states he "didn't have spinal cord tension in the nerves intill [sic] September of 2000." Id. As of April 29, 2001, the plaintiff was "still being treated for Spinal cord injuries at Winnebago Mental Health Institute." Id.

      C.      The Plaintiff's Claims and Relief Wanted

Throughout his complaint, the plaintiff lists several claims but does not link them to any particular person or entity. The plaintiff claims "Violation of Wisconsin Statues—False imprisonment, Civil Rights, Loss of wages, punitive damages, no proper representatation [sic] by Lawyer, and know [sic] help from the NAACP in the South East counties in Wisconsin." Id. at 4. He also claims, "Damage vehicle-windows, Terrorized by white, males and female officers also employee's [sic][,]" "Patient right's [sic] were violated" and that he was "shot in the back for no reason." Id. The plaintiff asks, "[w]ill those officers in Kenosha and Racine Counties be corrected for their deviant behavior and police Brutality hate crimes" and "[w]ill false police reports be expunged and dismissed by the presiding[]Civil Judge in Racine County Court room Civil Divsion [sic] 1 or 2." Id. at 3-4. Finally, the plaintiff claims that "[t]he officers did not use their discretion, the reason why I believe that is because the other officers should of stop the other from beating me, when I yelled 'I cant breathe'" and that "[t]he Law[]Enforcement officer; failure to render aide. 940.291(1)(2)[4] in Kenosha County." Id. at 6.

---

[4] Wis. Stat. §940.291(1)(2) criminalizes when a "peace officer, while acting in the course of employment or under the authority of employment, . . .

9

The plaintiff requests $30 million in relief and the following:

> I would like for the courts to stop neglect hiring within Police Depts. In citys [sic] that have a large population of African Americans. I would like for the courts to have a quota like it use to be to hire a 89% of Black Applicants for police depts, so the communities fill [sic] safe. I would like for African American citizens that we have a safe passage to colleges or universities and able to return to our homes without any trama [sic] when we are fresh out of school. I would like for Black officials to greet black candidates when applying and testing also when interviewing so African Americans can be guided in the right direction for training and work. Also, every time a [sic] African American is involved in a police incident I would like for black officers to be present when a White officer uses his discretion.

Id. at 7.

### III. Analysis

Federal courts are courts of limited jurisdiction. The court can hear and decide only claims between citizens of different states where the amount in controversy is more than $75,000 ("diversity" jurisdiction), see 28 U.S.C. §1332, or claims that involve a violation of federal law or the Constitution ("federal question" jurisdiction), see 28 U.S.C. §1331. When a plaintiff alleges violations of *state* statutory or common law in *federal* court, the federal court may hear and decide those *state-law* claims only if the plaintiff also has alleged claims over which the federal court has diversity or federal question jurisdiction and the state-law claims are "so related" to the diversity or federal

---

intentionally fails to render or make arrangements for any necessary first aid for any person in his or her actual custody."

question claims that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367.

Some of the plaintiff's claims sound like state law claims—he cites violations of Wisconsin statutes and mentions vehicle damage and patients' rights. The court can exercise "supplemental" jurisdiction over such state-law claims only if the plaintiff also has brought claims over which the court has original jurisdiction. Because the parties in this case are not from different states, the court will have original jurisdiction only if the plaintiff has alleged that the defendants violated federal law or the federal Constitution.

The way that a plaintiff can bring claims of constitutional violations against state government employees is through 42 U.S.C. §1983, a federal civil rights statute. To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that a person deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)).

### A. The Pleasant Prairie Police Department

Although the complaint appears to sue the Pleasant Prairie Police Department, it does not explain which violations it believes the department committed. The complaint mentions the *Pleasant Prairie* Police Department only in relation to the incident on December 9, 1998; it says that the *Racine* Police Department was involved with the incident on March 30, 1999 (but the

11

complaint does not name the Racine Police Department as a defendant). Dkt. No. 1 at 3-6. Only the events of December 9, 1998 are relevant to the Pleasant Prairie Police Department, and it appears that in connection with those events, the plaintiff alleges excessive force, failure to intervene, failure to render aid and false imprisonment. Id. It appears the plaintiff also may be alleging racial discrimination, because he alleged "police Brutality hate crimes" and that he was "[t]errorized by white, males and female officers." Id. at 3-4.

Several of these claims are grounded in the Fourth Amendment. See Plumhoff v. Rickard, 572 U.S. 765, 774 (2014) ("A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard."); Turner v. City of Champaign, 979 F.3d 563, 571 (7th Cir. 2020) ("The fate of [a] plaintiff's failure to intervene claim is closely linked to that of [their] excessive force claim since, by definition, if there is no excessive force then there can be no failure to intervene."). A plaintiff may sue a state or local official, like a police officer, for violating his Fourth Amendment rights under §1983.

Unlike an individual police officer, however, a police *department* is not a suable entity. Defendants in a federal lawsuit must have the legal capacity to be sued, and the "law of the state where the court is located" determines that capacity for entities that are not individuals or corporations. Fed. R. Civ. P. 17(b)(3); see also DeGenova v. Sheriff of DuPage Cnty., 209 F.3d 973, 976 n.2 (7th Cir. 2000) ("The federal courts look to state law to determine if a defendant is amenable to suit."). Under Wisconsin law, a police department does not have

the capacity to be sued. See Whiting v. Marathon Cnty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004) (stating a sheriff's department "is not a legal entity separable from the county government which it serves and is therefore, not subject to suit"). Because the Pleasant Prairie Police Department is not a suable entity under Wisconsin law, the plaintiff may not proceed against it, regardless of his claims. The court will give the plaintiff an opportunity to amend his complaint to name a suable person or entity, such as the specific Pleasant Prairie Police officer or officers who allegedly violated his rights.

The plaintiff should be aware, however, that §1983 allows a plaintiff to sue only those state or local actors who were personally involved in the alleged constitutional violations. Aguilar v. Gaston-Camara, 861 F.3d 626, 630 (7th Cir. 2017) ("§ 1983 does not establish a system of vicarious liability; a public employee's liability is premised on her own knowledge and actions, and therefore requires evidence that each defendant, through [their] own actions, violated the Constitution"). Nor may a plaintiff sue a supervisor—such as a police chief—for violations committed by the supervisor's subordinates unless that supervisor was personally involved in the constitutional violation. Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021) (citing Gill v. City of Milwaukee, 850 F.3d 335, 344 (7th Cir. 2017)). "Personal involvement in a subordinate's constitutional violation requires supervisors to 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" Id. at 494 (quoting Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012)).

The plaintiff may not know the names of the officers involved in the December 9, 1998 incident at the Super Value warehouse. He may use "John Doe" or "Jane Doe" placeholders, along with any identifying characteristics (such as "female officer on duty at or after 11:00 p.m. on December 9, 1998" or "Caucasian officer with brown hair and glasses on duty at or after December 9, 1998") to identify the specific officers. If the court screens the amended complaint and concludes that it states a claim against a "John Doe" or "Jane Doe" officer, it will allow the plaintiff to use the discovery process to learn the actual names of the officers.

B.  Steve McKinnon

The plaintiff lists Steve McKinnon as a defendant, but the body of the complaint does not explain who Steve McKinnon is, what his job is or whether he had any involvement with either of the alleged incidents. It is possible that Steve McKinnon was one of the officers who allegedly violated the plaintiff's rights,[5] but the complaint does not say that. To state a claim against McKinnon, the plaintiff must explain what McKinnon did to violate the plaintiff's rights. The plaintiff cannot state a claim against Steve McKinnon by simply listing his name in the caption, without providing any detail about McKinnon's specific involvement. See Collins v. Kibort, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including

---

[5] Throughout the plaintiff's complaint, he describes involved officers with phrases like "one officer with brown hair and mustash [sic]" and "the unidentified paranoid officer." Dkt. No. 1 at 3. He does not explain whether any of these descriptions apply to Steve McKinnon.

14

the defendant's name in the caption."). Because the plaintiff has failed to state a claim against McKinnon, the court will dismiss McKinnon as a defendant unless, by the deadline the court sets at the end of this order, the plaintiff files an amended complaint clarifying the allegations against Steve McKinnon.

**IV. Other Issues**

    A.    <u>Statute of Limitations</u>

A "statute of limitations" "establish[es] a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." STATUTE OF LIMITATIONS, Black's Law Dictionary (11th ed. 2019). In a §1983 case, "state law provides the applicable statute of limitations;" the federal court looks to the "statute of limitations for personal injury actions in the state where the alleged injury occurred." <u>Milchtein v. Milwaukee</u> C'nty, 42 F.4th 815, 822 (7th Cir. 2022) (quoting <u>Behv. Inst. Of Ind., LLC v. Hobart City of Common Council</u>, 406 F.3d 926, 929 (7th Cir. 2005)). In Wisconsin, the court looks to Wis. Stat. §893.53, which imposes a six-year limitation period.[6] <u>Id.</u> That statute requires a plaintiff to file his §1983 lawsuit within six years "after the cause of action accrues." Statutes of limitation apply to self-represented parties. See <u>Dickens v. Illinois</u>, 753 F. App'x, 390, 392 (affirming dismissal of a *pro se* complaint by applying the statute of limitations under §1983).

---

[6] In 2018, the statute was amended to reduce the limitation period from six to three years, but the plaintiff's allegations date back to 1998 and 1999, so it appears that the pre-2018 version of the limitation period applies.

15

The allegations in the plaintiff's complaint involve incidents that occurred on December 9, 1998 and March 30, 1999. Dkt. No. 1 at 3-6. The more recent incident occurred approximately twenty-four years before May 15, 2023 (the date on which the plaintiff filed his complaint in federal court). On the face of the complaint, the plaintiff's claims are time-barred because he did not file his lawsuit within six years after his causes of action accrued.

There are circumstances that can "toll"—pause—the limitation time clock. The plaintiff's July 21, 2001 letter to Attorney Robert GinGras mentioned that the plaintiff had been "[s]entenced to Winnebago Mental Health Institute." Dkt. No. 1 at 4. "Wisconsin [law] . . . provides for tolling up to 5 years if the plaintiff was 'mentally ill' when the injury accrued and continues to be mentally ill." Lewis v. Stenz, 637 F. App'x 943, 944 (7th Cir. Mr. 15, 2016) (citing Wis. Stat. §893.16(1) and Walberg v. St. Francis Home, Inc., 281 Wis. 2d 99, 110 (Wis. 2005) (stating that "when a person's mental disability ceases, the action must be commenced within two years" but that "the underlying period of limitation still cannot be extended more than five years" (citing Wis. Stat. §893.16(1)). Even if §893.16(1) applies to the plaintiff, he appears to have filed his federal complaint nineteen years after the tolled time likely expired— thirteen years after the limitation period expired.

"The application of a statute of limitations is an affirmative defense." Lewis, 637 F. App'x at 944. "Only when the outcome is uncontestable should a district court apply a statute of limitations to dismiss a lawsuit before the defendants have been served with process." Id. (citations omitted). Because the

16

court is giving the plaintiff one chance to amend his complaint to state a claim, it will not dismiss the case as time-barred at this point. But if it is "evident" from the face of the amended complaint that the plaintiff's claims are time-barred, the court may dismiss the case. See Dickens, 753 F. App'x at 392 (affirming a district court's dismissal of a complaint as time-barred prior to service on the defendant because the fact that the complaint was time-barred was evidence on the face of the complaint).

B. Amended Complaint Information

If the plaintiff decides to take the opportunity to amend his complaint, there are several things of which the plaintiff should be aware. First, an amended complaint takes the place of, or "supersedes," the original complaint. Flanner v. Recording Indus. Ass'n of Am., 354 F.3d 632, 638 n.1 (7th Cir. 2004). The plaintiff must include in the amended complaint all the facts supporting his claims, including facts he alleged in the original complaint; he cannot simply tell the court to go back and look at what he alleged in his original complaint.

Second, the plaintiff must clearly identify the specific people or entities he believes violated his rights. He must list each person or entity he wishes to sue in the caption of the amended complaint (at the top of the first page) *and* he must identify in the body of the complaint what each person or entity did to violate his rights. Again, if the plaintiff does not know the names of the people whom he believes violated his rights, he may use "John Doe" and "Jane Doe"

17

placeholders, along with descriptions, to identify them. Alleging only that "police" or "officers" violated his rights will not suffice.

If the plaintiff needs more time to amend his complaint, he must file a motion in time for the court to receive it *before* the deadline for filing an amended complaint expires, asking for an extension of time. If the court does not receive either an amended complaint or a motion for an extension of time by the deadline the court sets below, the court will dismiss the original complaint—and the case—for failure to state a claim upon which this federal court can grant relief.

The court is sending with this order a blank amended complaint form. The plaintiff must use that form in preparing his amended complaint. He must put the case number for this case—Case No. 23-cv-614—in the space on the first page provided for a case number. The plaintiff should use the spaces on pages 3 and 4 to recite the facts of his claims; if that is not enough space, he may use up to three additional, double-spaced pages. When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his

rights. Again, the amended complaint must be complete in itself. It may not refer the court back to allegations in the original complaint.

C. Service

On March 28, 2024, the plaintiff filed eight pages of documents, consisting of eight copies of page 2 of the court's civil summons form. Dkt. No. 15. These documents give the impression that the plaintiff tried to serve eight individuals, seven of whom are not mentioned anywhere in the complaint and none of whom are named as defendants. Federal Rule of Civil Procedure 4(b) requires that a "summons . . . must be issued for each defendant to be served." The docket does not indicate whether the Clerk of Court issued summons for these individuals, and they are not defendants. The plaintiff's attempts to serve them did not comply with the law.

The plaintiff also filed a single-page document consisting of another copy of page 2 of the court's civil service form. Dkt. No. 14. This document appears to state that a private investigator personally served defendant Stephen McKinnon on March 27, 2024, although it does not describe how that personal service was effectuated. But the court had not yet screened the complaint, and the court now has concluded that the plaintiff may not proceed against McKinnon unless he files an amended complaint alleging specifically what McKinnon did to violate his constitutional rights.

If the plaintiff elects to file an amended complaint by the deadline the court sets below, he *must not* attempt to serve that amended complaint. The court will screen a timely-filed amended complaint. If the court concludes that

19

the complaint states a viable claim against any defendants, it will notify the plaintiff so that he may serve the defendants against whom the court allows him to proceed.

**V.    Conclusion**

The court **ORDERS** that if the plaintiff wishes to proceed with this case, he must file an amended complaint that complies with the instructions in this order no later than the end of the day on **June 7, 2024**. The plaintiff must file the amended complaint in time for the court to *receive it* by the end of the day on June 7, 2024. If the court does not receive an amended complaint, or a motion asking for additional time to file one, by the end of the day on June 7, 2024, the court will dismiss this case for failure to state a claim upon which this federal court can grant relief.

Dated in Milwaukee, Wisconsin this 10th day of April, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**